| | |
|---|---|
| CYNTHIA GRAHAM )<br>)<br>Plaintiff, )<br>) Civil Case No. 1:10-CV-316<br>v. )<br>) Chief Judge Curtis L. Collier<br>BLUECROSS BLUESHIELD OF )<br>TENNESSEE, INC. )<br>)<br>Defendant. ) | |

# **M E M O R A N D U M**

Before the Court is a motion for summary judgment filed by Defendant Bluecross Blueshield of Tennessee, Inc. ("Bluecross") (Court File No. 11). Plaintiff Cynthia Graham ("Plaintiff") has responded (Court File No. 15), and Bluecross has replied (Court File No. 17). Plaintiff, a former employee of Bluecross, claims she was discriminated against and terminated in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"). For the following reasons, the Court will **GRANT** the motion for summary judgment (Court File No. 11).

## I.  FACTS

The facts in this case are straightforward and mostly undisputed. Plaintiff worked as a Configuration Analyst for Bluecross until her termination on September 24, 2010. Bluecross had an attendance policy, of which Plaintiff was aware, under which an employee could face termination if she accrued more than five unapproved absences in a rolling 12-month period (Court File No. 12-1 ["Graham Dep."], p. 44; Court File No. 12-2, pp. 11-13).

Bluecross also maintained an FMLA policy, which was administered by third-party "Unum

Group" ("Unum") (Court File No. 12-2, pp. 1-8). Plaintiff reviewed and understood the policy (Graham Dep. at 32-35), and knew it was her responsibility to provide appropriate medical certifications to justify FMLA leave (Graham Dep. at 51-52; Court File No. 12-2, p. 18). In fact, several years before the events giving rise to this lawsuit, Plaintiff had occasion to become familiar with the policies and processes of Bluecross' FMLA administration. In 2007 Plaintiff was approved for intermittent FMLA leave. Bluecross' FMLA policy states the company reserves the right to require recertification of the continuance of a serious health condition if, *inter alia*, "[c]ircumstances described by the original certification have changed significantly" (Court File No. 12-2, p. 6). When Plaintiff took FMLA leave in 2007, her doctor's certification stated the expected frequency Plaintiff would need to miss work was "unknown." After Plaintiff took at least 11 days of FMLA leave in February 2007, and 12 days in March 2007, Bluecross wrote her a letter stating medical recertification is required after an employee accumulates more than 7 absences in a month, if the original FMLA certification states the frequency of episodes is "unknown." Plaintiff signed this letter, and admits that after March 2007 she knew it was Bluecross' policy in "frequency unknown" cases to require medical recertification after 7 monthly absences (Court File No. 12-2, p. 18; Graham Dep. at 49).

Three years later the events giving rise to this case occurred. On May 11, 2010, Plaintiff requested intermittent FMLA leave for migraine headaches. On the request form, she stated the expected leave frequency as 4 episodes per month, 3-4 days per episode. On May 13, 2010, she received a letter from Unum notifying her she was eligible for FMLA leave, and would need to provide medical certification to support her request by May 26, 2010. Plaintiff did submit a medical certification form, but it was insufficient to support her requested FMLA leave inasmuch as the

2

doctor stated an expected frequency of only 1 episode per month lasting 3 to 4 days – significantly less than what Plaintiff was requesting (Court File No. 12-2, pp. 33, 35; Graham Dep. at 82). On June 18, 2010, Unum notified Plaintiff the medical certification was insufficient to support her FMLA request, and invited Plaintiff to submit additional information from her doctor (Court File No. 12-2, pp. 35-36).

On June 28, 2010, Plaintiff's doctor amended the medical certification to state "Ms. Graham occasionally has 2 headaches per month that can last up to 5-6 days" (*id*. at 37). However, in the interim Plaintiff had increased her requested frequency and duration of leave to 4 episodes per month, 6 days per episode (Court File No. 12-2, p. 38; Graham Dep. at 86-87). Thus, there was once again a mismatch between Plaintiff's requested FMLA leave frequency and the certification she received from her doctor. Again, Unum invited Plaintiff to submit additional information to support her increased request (Court File No. 12-2, pp. 38-39).

On July 2, 2010, Plaintiff's doctor amended the medical certification to state "Mrs. Graham's headaches are variable and unpredictable in duration. I cannot give a clear frequency or duration at this time." (*Id*. at 40). Following receipt of this addendum, Unum notified Plaintiff by letter dated July 13, 2010 that her leave had been approved as follows:

- **May 13, 2010** through **July 01, 2010** has been approved for FMLA leave on an intermittent schedule.

- **July 12, 2010** through **January 01, 2011** has been approved for FMLA leave on an intermittent schedule.

These leaves will count against your available leave entitlements.

This decision is based on our receipt of complete and qualifying medical certification or documentation to support your request for family/medical leave.

As of the date of this letter, you have used 3 week(s) . . . of federal FMLA leave, and

3

you will have 9 week(s) . . . of federal FMLA leave remaining.

(*Id*. at 41). The letter further stated periodic medical recertification may be required "if you request an extension of your leave or as otherwise permitted by law." (*Id*. at 42). Plaintiff admits she understood that, because her doctor's final certification stated he could not provide a "clear frequency or duration" for Plaintiff's expected episodes, Bluecross would treat the certification as supporting a maximum of 7 days intermittent leave per month, pursuant to its policy (Graham Dep. at 49, 51; Court File No. 12-2, p. 17; *see* Court File No. 15 ["Plaintiff's Brief"], ¶ 15).

Immediately following approval of her FMLA request for intermittent leave, Plaintiff missed the next 28 consecutive days of work, from July 14, 2010 to August 20, 2010. This was a longer absence than any of her prior episodes (Graham Dep. at 107-09). On July 26, 2010, after Plaintiff's seventh absence within the month, Unum sent Plaintiff a letter notifying her that the frequency and/or duration of her absences appeared to differ significantly from her medical certification, and she would need to submit a medical recertification by August 13, 2010 to support any additional leave beyond July 22, 2010 – the seventh absence of the month (Court File No. 12-2, p. 44). Plaintiff claims she never received this letter, though she admits it bears her proper address (Court File No. 16 ["Graham Aff."], ¶ 14; Graham Dep. at 100-01).

On August 17, 2010, Unum sent Plaintiff a second letter notifying her it had not received the requested recertification, and that her leave from July 23, 2010 onward was not approved as FMLA leave (Court File No. 12-2, p. 52). Again, Plaintiff claims she never received this letter (Graham Aff. at ¶14; Graham Dep. at 104-05). According to Bluecross, Plaintiff met with supervisors several times over the next month to discuss the need for medical reauthorization to support the absences she had accrued after July 22, 2010. In her affidavit, Plaintiff denies having these meetings (Graham

4

Aff. ¶ 18). However, in her deposition she admitted to having meetings with supervisors during September 2010, in which "they would ask me about the information from my doctor" (Graham Dep. at 139). At that time, Plaintiff knew the reason her supervisors were asking for medical information "was because that, you know, the sufficient information had not been submitted" (*id*.). Furthermore, Plaintiff admits to having a conference phone call in September 2010 with Human Resources Consultant Hal Gault, where she was told her doctor needed to provide additional information to support her past absences (*Id*. at 129).

On September 24, 2010, after Plaintiff still had not submitted the requested medical recertification to support her past absences, Plaintiff's supervisor Sarah Carden recommended Plaintiff be terminated because she had accumulated 26 unexcused absences. Ms. Carden's supervisor, Karen Ledford, approved this recommendation, and Plaintiff was terminated that same day. A month later Plaintiff filed this suit, alleging she was terminated in violation of the FMLA.

**II.    STANDARD OF REVIEW**

Summary judgment is proper if the movant shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but

must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. ANALYSIS

#### A. FMLA Framework

The FMLA provides eligible employees with up to 12 weeks of leave per 12-month period when the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The Court of Appeals for the Sixth Circuit acknowledges two theories of recovery under the FMLA. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507-08 (6th Cir. 2006). The "interference" theory recognizes employers may not "interfere with, restrain, or deny the exercise or attempt to exercise any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). The "retaliation" or "discrimination" theory arises from the provision making it "unlawful for any employer to discharge or in any other manner

6

discriminate against any individual for opposing any practice made unlawful by this subchapter."
29 U.S.C. § 2615(a)(2). Here, Plaintiff raises only an interference claim.

To prevail on an FMLA interference claim, a plaintiff must show: "(1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Edgar*, 443 F.3d at 507. Here, the latter two elements are at issue,[1] and together form the decisive inquiry in this case: whether Plaintiff's FMLA notice to Bluecross – including her medical certification – entitled her to the amount and frequency of leave she actually took. If it did, her termination was a wrongful interference with FMLA benefits. If it did not, her termination did not deprive her of anything to which she was entitled, and her claim must fail.

### B. Medical Certification and Recertification Process

"[T]he FMLA is not implicated and does not protect an employee against disciplinary action based upon absences if those absences are not taken for one of the reasons enumerated in the Act, . . . [but] the FMLA *is* implicated and does protect an employee against disciplinary action based on her absences if those absences are taken for one of the Act's enumerated reasons." *Culpepper v. BlueCross BlueShield of Tenn., Inc.*, 321 F. App'x 491, 495 (6th Cir. 2009) (quotation omitted). Here, it is undisputed Plaintiff's migraine headaches were a "serious health conduction" under 29 C.F.R. § 825.113, which qualified her for FMLA leave.

However, suffering from a qualifying serious health condition is not enough to justify an

---

[1] As for the third element, it is undisputed Plaintiff was entitled to *some* leave. Whether she was entitled to the amount leave she actually took is best considered under the fifth element.

7

employee simply taking leave whenever and for however long she wishes; the FMLA authorizes a medical certification process which, among other things, serves to verify employee's claimed health conditions and apprise employers of the amount and frequency of leave an employee will likely need. Under this process, "[a]n employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a). Once requested, the employee must provide the certification to the employer within 15 days, unless impracticable. 29 C.F.R. § 825.305(b). If the employee fails to provide a medical certification to support the amount of leave she has taken or wishes to take, or fails to cure any deficiencies in the certification after being given seven days to do so, "the employer may deny the taking of FMLA leave." *Id.* at § 825.305(c) & (d); *see also Culpepper*, 321 F. App'x at 497 (affirming this Court's grant of summary judgment for a defendant employer when it terminated the plaintiff employee for missing 11 days of work when her FMLA medical certification only supported six days' absence).

The FMLA also contemplates situations where it may be appropriate for employers to require medical *re*certifications "on a reasonable basis." 29 U.S.C. § 2613(e). Pursuant to FMLA regulation, an employer may generally request recertification every 30 days. 29 C.F.R. § 825.308(a). However, an employer may request recertification more often than 30 days if, among other things:

> Circumstances described by the previous certification have changed significantly (*e.g.*, the duration or frequency of the absence, the nature or severity of the illness, complications). For example, if a medical certification stated that an employee would need leave for one to two days when the employee suffered a migraine headache and the employee's absences for his or her last two migraines lasted four days each, then the increased duration of absence might constitute a significant change in circumstances allowing the employer to request a recertification in less than 30 days.

*Id.* at § 825.308(c)(2). Failure to submit a reasonably-requested medical recertification authorizes

8

the employer to deny taking FMLA leave. *Id*. at 825.305(d).

Here, it is undisputed Plaintiff did not provide the medical recertifications requested after her leave – commencing July 14, 2010 – extended beyond seven days.[2] The issue, then, is whether Plaintiff's initial medical certification and FMLA approval supported the amount of leave she took, and relatedly, whether Blucross's requests for medical recertification were reasonable. According to Plaintiff, her original medical certification[3] and Unum's July 13, 2010 letter approving her for FMLA leave were sufficient to cover her subsequent 28-day absence. Likewise, Plaintiff argues the requested medical recertifications were unreasonable, thus her failure to obtain them did not justify Bluecross in denying her leave.

**C. Plaintiff's certification did not entitle her to unfettered FMLA leave**

Plaintiff's theory of the case hinges on the proposition that her doctor's inability to provide any guidance on the frequency and duration of her needed leave entitled her to take as much leave, as often as she desired, so long as it cumulatively amounted to less than the FMLA's annual 12-week limit. This theory is both unreasonable and contrary to Plaintiff's own admitted knowledge. An obvious purpose of the medical certification process is to give employers an idea of the amount of time an employee will need to take off, so the employer can make plans to accommodate the employee while continuing to effectively run the business. Indeed, if notice to the employer is not a purpose of the medical certification process, it is difficult to see why medical certifications would need to include the estimated frequency and duration of required leave, rather than just a straight

---

[2]Although Plaintiff alleges she never received the two requests for medical recertification which were mailed to her, she does admit she knew by September 2010 that BlueCross needed her to submit medical recertification.

[3]As twice-amended, to state an unknown frequency and duration of required leave.

9

diagnosis. *See* 29 C.F.R. § 825.306. Given the important correlation between the amount of leave taken and a supporting medical certification, it is irrational to think a doctor's inability to judge how much leave an employee might need effectively gives that employee *carte blanche* to take FMLA leave up to the hilt. Accordingly, the Court rejects the notion that Plaintiff's medical certification, in which the doctor stated he was unable to "give a clear frequency or duration" of Plaintiff's migraines due to their "variable and unpredictable" nature, inexorably entitled her to take her remaining nine weeks of annual FMLA leave in any configuration she wished, including 28 straight absences.

Moreover, Plaintiff herself had actual knowledge that, under Bluecross' policy, a medical certification listing an unknown frequency and duration of leave was treated as supporting a maximum of seven days of intermittent FMLA leave per month. She had been through this routine before: in 2007 Plaintiff was approved for intermittent FMLA leave based on a medical certification listing an "unknown" frequency and duration. Subsequently, she took 11 days of leave one month,12 the next. Bluecross wrote Plaintiff a latter, which she signed, explaining it was Bluecross' policy in "frequency unknown" cases to require medical recertification after seven monthly absences. Plaintiff admits that since 2007 she knew this was Bluecross' policy (Graham Dep. at 49, 51). Accordingly, Plaintiff's contention she believed her approval for intermittent FMLA leave meant she could take any amount and configuration of leave is flatly contradicted by her own admission of her knowledge, and in any event would be an unreasonable belief in light of Plaintiff's past experience taking FMLA leave.

### D. Bluecross' had a reasonable basis to request medical recertification

While the Court has found Plaintiff's medical certification and approval for intermittent

10

FMLA leave did not automatically entitle her to take her remaining annual FMLA leave in any configuration she wished, the question still remains whether Bluecross had a "reasonable basis" for requesting medical certification when it did. *See* 29 U.S.C. § 2613(e). The Court finds there was such a reasonable basis. Per regulations, an employer may request recertification sooner than 30 days after receiving the initial certification if, among other things, "[c]ircumstances described by the previous certification have changed significantly (*e.g.*, the duration or frequency of the absence . . .)." 29 C.F.R. § 825.308(a). By way of an instructive example, the regulations state an employer would be justified in requesting recertification on the basis of changed circumstances if an employee suffering from migraines missed 4 days per episode, when her medical certification stated she would only need leave for 1-2 days per episode.

In this case, Plaintiff missed 28 consecutive days of work, when her medical certification listed an unknown frequency and duration of migraine episodes. Plaintiff argues this absence did not constitute "changed circumstances" – inasmuch as a 28-day absence is not logically at odds with a doctor's saying it is "unknown" how often and for how long a patient will have migraines – thus Bluecross was not justified in seeking medical recertification. However, as already explained, the Court rejects the notion that a "frequency unknown" medical certification automatically supports taking the full annual allotment of FMLA leave in whatever configuration one wishes. A necessary corollary to this rejection is that certain patterns of leave following a "frequency unknown" certification constitute "changed circumstances" justifying recertification. Even viewing the facts in the light most favorable to Plaintiff, such circumstances certainly existed here. Plaintiff's 28-day absence was much longer than her usual absences, and twice as long as the longest episode she had ever had before (Graham Dep. at 109-11). Given Plaintiff's past patterns of leave, and in light of

11

the general purpose of the FMLA's medical certification provisions, no rational juror would conclude it was unreasonable for Bluecross to seek medical recertification after Plaintiff's lengthy absence.[4] *See Andrews v. CSX Transp., Inc.*, No. 3:06-CV-704-J-32HTS, 2009 WL 5176462, *7 (M.D. Fla. Dec. 22, 2009) (finding an employer's request for recertification was reasonable when an employee took FMLA leave 13 times in a month – "a significant up-tick" from her prior use of leave – and her medical certification "stated that the duration of her need for intermittent leave was 'unknown'").

Accordingly, the Court concludes Bluecross had a "reasonable basis" for seeking recertification. Because Plaintiff failed to provide this recertification after being given sufficient time to do so, Bluecross was justified in terminating her. 29 C.F.R. § 825.305(d); *see also Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 579 (6th Cir. 2007) (holding an employer provided the plaintiff a reasonable opportunity to cure certification deficiencies when it granted her a one-week extension). Bluecross is therefore entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Bluecross' motion for summary judgment (Court File No. 11).

**An Order shall enter.**

---

[4]The Court need not and therefore does not determine whether Bluecross' policy of requiring recertification after just seven monthly absences was reasonable. It is uncontroverted that at least a week before her termination – well-after the conclusion of her 28-day absence – Plaintiff knew Bluecross required a medical recertification from her (Graham Dep. at 142). Therefore, for purposes of this opinion, 28 is the relevant number, not seven.